IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Donald J. KRAEMER, Attorney at Law.

Supreme Court

*No. 94–2563–D. Submitted on briefs February 29, 1996.—Decided May 1, 1996.*

(Also reported in 547 N.W.2d 186.)

For the Board of Attorneys Professional Responsibility there were briefs by *Gregg Herman*, counsel, Milwaukee.

For Donald J. Kraemer there was a brief by *Gerald P. Boyle*, Milwaukee.

PER CURIAM. The Board of Attorneys Professional Responsibility (Board) appealed from the referee's conclusions of law in respect to the professional misconduct of Attorney Donald J. Kraemer in having engaged in sexual contact with a client and from the recommendation that Attorney Kraemer be publicly reprimanded for that misconduct and receive a private reprimand for his neglect of that client's legal matter. The Board contended that the referee's application of a rule of professional conduct to conduct that occurred several years prior to the effective date of the rule was improper and that the applicable rules were those in effect at the time of the misconduct.

We determine that the applicable professional conduct rules are those that were in effect when Attorney Kraemer's misconduct occurred, not the rule subsequently enacted. On the issue of discipline, we determine that the seriousness of Attorney Kraemer's having unsolicited sexual contact with a client, together with his neglect of a legal matter, warrants

the suspension of his license to practice law for six months. Attorney Kraemer used his professional position in the attorney-client relationship for purposes of his own personal gratification, violating thereby the fundamental duty of trust inherent in the position he assumed as lawyer for his client.

Attorney Kraemer was admitted to practice law in Wisconsin in 1962 and practices in Waukesha. In 1991, the Board publicly reprimanded him for having had his secretary sign and notarize a client's name on a notice of personal injury claim to be filed with the state and falsely stating to the Board in its investigation of the matter that he had no knowledge of the forgery. That reprimand was imposed also for his neglect in filing the notice of claim late. The referee in this proceeding, Attorney Joan Kessler, made findings of fact based on testimony and evidence presented at a disciplinary hearing, and those findings are not disputed.

In May, 1985, dissatisfied with the representation provided by a law firm she had retained to represent her in a personal injury matter, a woman retained the law firm at which Attorney Kraemer was employed. Attorney Kraemer became acquainted with the woman while he was working on her legal matter. In August, 1987, when it appeared the personal injury action would go to trial, the matter was transfered to another attorney in the office but that transfer of responsibility was not made known to the client. The referee found that a "sexual relationship" began between Attorney Kraemer and the client, with a number of sexual contacts between the two occurring at the client's apartment, while the personal injury matter was pending with the law firm but after Attorney Kraemer ceased any personal involvement in it.

Sometime after the client's claim was settled in early March, 1988, Attorney Kraemer gave the woman expensive jewelry, which she accepted, and sexual intimacy followed. The referee considered the gift and its retention as reflecting the voluntary and mutual nature of the sexual relationship between the client and Attorney Kraemer.

Following the gift, there was no contact between Attorney Kraemer and the client until the woman called Attorney Kraemer in 1992 for legal assistance in pursuing support arrearages and other payments that had been ordered in a paternity matter concerning the child the woman had in March, 1990, fathered by a man she had expected to marry. The woman had called several other attorneys to represent her but was unable to pay the hourly fees of $120 to $130 they had requested. The woman offered to pay Attorney Kraemer an hourly fee of $25 or $30 and he agreed to represent her but did not charge her a fee. While representing her in that matter, sexual contact occurred between them.

In the course of the representation, Attorney Kraemer obtained but neglected to record a judgment for child support arrearages and medical payments to which the woman was entitled. The client herself recorded a judgment lien prior to the sale of real estate to which it applied and received the funds to which she was entitled by virtue of the lien.

In determining whether Attorney Kraemer's sexual contact with the client in 1988 and 1992 constituted professional misconduct, the referee applied the rule the court adopted in April, 1995, SCR 20:1.8(k),[1]

---

[1] SCR 20:1.8 provides, in pertinent part:

**Conflict of interest: prohibited transactions**

. . .

prohibiting a lawyer's sexual relations with a client under specified circumstances. The referee applied that rule to conduct that had occurred long before its enactment apparently because she understood the Board to have agreed to that rule's applicability, based on Board counsel's assertion that the 1995 rule codified existing law.

The referee concluded that the sexual contact Attorney Kraemer had with the client while his law firm was representing her in the personal injury matter violated the rule but that the sexual contact three years later during his representation of her in the paternity matter did not because a "consensual sexual relationship" existed between them before the attorney-client relationship in that matter commenced. The referee based the latter finding, in part, on the fact that after the personal injury matter was concluded, Attorney Kraemer gave the woman a present, she accepted it, and sexual contact followed.

The referee further concluded that Attorney Kraemer's failure to record the judgment in the paternity

---

(k)(1)   In this paragraph:

(i)   "Sexual relations" means sexual intercourse or any other intentional touching of the intimate parts of a person or causing the person to touch the intimate parts of the lawyer.

(ii)   If the client is an organization, "client" means any individual who oversees the representation and gives instructions to the lawyer on behalf of the organization.

(2)   A lawyer shall not have sexual relations with a current client unless a consensual sexual relationship existed between them when the lawyer-client relationship commenced.

(3)   In-house attorneys representing governmental or corporate entities are governed by SCR 20:1.7(b) rather than by this paragraph with respect to sexual relations with other employees of the entity they represent.

matter as a lien against real estate constituted neglect, in violation of SCR 20:1.3.[2]

The referee recommended separate discipline for each type of Attorney Kraemer's misconduct: a public reprimand for the sexual contact and a private reprimand for the neglect. The referee recognized the seriousness of sexual contact with a client because of the substantial risk it poses to the quality of the attorney's legal services and that the client will be imposed upon unfairly, but she opined that neither of those circumstances was present here.

In this appeal, as in the course of the disciplinary proceeding, the Board asserted that the rules of professional conduct applicable to Attorney Kraemer's conduct are those that were in force at the time of that conduct: the general rule prohibiting a lawyer from representing a client if that representation may be materially limited by the lawyer's own interests, unless the lawyer reasonably believes the representation will not be adversely affected and the client consents in writing after consultation, SCR 20:1.7(b);[3] and the conduct rule established by this court in the

---

[2] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] SCR 20:1.7 provides, in pertinent part:

. . .

(b)  A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1)  the lawyer reasonably believes the representation will not be adversely affected; and
(2)  the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken,

■

line of cases dealing with lawyer unsolicited sexual contact with clients. *See State v. Heilprin*, 59 Wis. 2d 312, 207 N.W. 2d 878 (1973); *In re Disciplinary Proceedings Against Gibson*, 124 Wis. 2d 466, 369 N.W.2d 695 (1985); *In re Disciplinary Proceedings Against Hallows*, 136 Wis. 2d 72, 401 N.W.2d 557 (1987); *In re Disciplinary Proceedings Against Woodmansee*, 147 Wis. 2d 837, 434 N.W.2d 94 (1989); *In re Disciplinary Proceedings Against Hanson*, 150 Wis. 2d 588, 442 N.W.2d 51 (1989); *In re Disciplinary Proceedings Against Ridgeway*, 158 Wis. 2d 452, 462 N.W.2d 671 (1990); *In re Disciplinary Proceedings Against Heilprin*, 168 Wis. 2d 1, 482 N.W.2d 908 (1992); and *In re Disciplinary Proceedings Against Strigenz*, 185 Wis. 2d 370, 517 N.W.2d 190 (1994). Pursuant to SCR 20:8.4(f),[4] violation of the latter rule constitutes professional misconduct.

the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

To the extent any of Attorney Kraemer's sexual contact with the client occurred prior to 1988, it is governed by the predecessor of that rule, former SCR 20.24 (1):

**Refusing employment when the interests of the lawyer may impair his or her independent professional judgment.**
(1) Except with the consent of the client after full disclosure, a lawyer may not accept employment if the exercise of his or her professional judgment on behalf of the client will be or reasonably may be affected by his or her own financial, business, property or personal interests.

[4] SCR 20:8.4 provides, in pertinent part:

It is professional misconduct for a lawyer to:
. . .
(f) violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers;

The Board's contention is correct. Whether or not the Board correctly characterized the 1995 rule as codifying existing law in respect to attorney sexual contact with clients, SCR 20:1.8(k) was adopted with no retrospective effect. Accordingly, Attorney Kraemer's conduct is governed by SCR 20:1.7(b) and 8.4(f).

Applying those rules to the facts before us, we conclude that Attorney Kraemer's sexual contact with his client while she was represented by his law firm and while he represented her in the paternity matter violated SCR 20:8.4(f). In respect to his failure to file the judgment lien, we adopt the referee's conclusion that his neglect of the client's legal matter violated SCR 20:1.3.

On the issue of discipline, the Board contended that the seriousness of Attorney Kraemer's misconduct warrants discipline more severe than the reprimands recommended by the referee. Based on discipline imposed in prior cases for attorney sexual contact with clients and in light of Attorney Kraemer's neglect of the client's legal matter and his prior discipline, the Board argued that the misconduct established in this proceeding warrants a six-month license suspension. The Board also took the position that the court should not follow the unprecedented recommendation of separate discipline for different acts of misconduct, as the court heretofore has considered the totality of an attorney's misconduct established in a proceeding in determining the discipline to impose.

In determining appropriate discipline to impose here, we consider the seriousness of that misconduct, particularly Attorney Kraemer's sexual contact with his client while he or his law firm represented her in

two different matters at two different times, as well as the comparatively less serious matter of his failure to file a judgment lien on her behalf, which resulted in no harm to the client due to her resourcefulness in protecting her own interests. To assess the seriousness of Attorney Kraemer's sexual dealings with his client, it is necessary to understand the nature of what the referee's report referred to as their "consensual sexual relationship." The nature and extent of that relationship are disclosed in the undisputed testimony of Attorney Kraemer and the client in the record before us.

In 1987, when the first sexual contact between Attorney Kraemer and the woman occurred, the woman was 33 years old, single and childless. Attorney Kraemer was 48, married and had children. Between 1987 and 1992, the two had sexual contact on six or seven occasions. Each of those took place during Attorney Kraemer's visits to the client's apartment, visits he initiated.

The first time Attorney Kraemer visited her, the client expected he would discuss the pending personal injury matter. Instead, Attorney Kraemer talked about marital problems he was experiencing. During that visit, Attorney Kraemer initiated sexual contact, which culminated in intercourse. The client testified that she initially refused his proposal of sexual contact but agreed because she thought it was expected of her and that if she did not consent, Attorney Kraemer would have her personal injury action dismissed.

During the months that followed, Attorney Kraemer visited the client at her apartment on five or six occasions, each time telephoning from his automobile at midday and asking if he could stop by. Most, if not all, of the sexual contact that occurred during those

visits consisted of masturbatory manipulation by the client on Attorney Kraemer. Two months after the client's personal injury case settled in early 1988, Attorney Kraemer visited her and gave her a pearl necklace and earrings and a masturbatory act ensued.

There was no further contact between Attorney Kraemer and the woman until February, 1992, when the woman asked his assistance in pursuing child support arrearages and payment of medical bills to which she was entitled pursuant to the resolution of a paternity proceeding. Attorney Kraemer went to the client's apartment to pick up an authorization to permit him access as her attorney to the paternity file and, while there, he requested that she perform a masturbatory act on him. The client testified that she felt pressured to comply because she needed legal assistance promptly, as a court hearing was scheduled for a month thereafter.

After the paternity matter was completed, Attorney Kraemer called the woman in June, 1993 stating that he wanted two hours alone with her. When the woman told him that her need to care for her child seldom left her alone, Attorney Kraemer responded, "Work it out. That's an order." The woman did not comply with that demand and had no further contact with Attorney Kraemer.

Those facts demonstrate that, rather than a sexual "relationship," the sexual contact Attorney Kraemer had with his client constituted the recurrent sexual exploitation of her. Notwithstanding that the sexual contact was consensual, at least to the extent that the client did not physically resist, it was unsolicited by her and, she testified, unwelcome. Moreover, other than his visits to her apartment, Attorney Kraemer never met with the client socially.

Except for the occasion on which he gave her the jewelry, the only time he spent with her occurred while he or his law firm was representing her in a pending legal matter. The fact that it was Attorney Kraemer who initiated the sexual contact in each instance and the nature of that contact support the conclusion that Attorney Kraemer was using his professional position representing the woman's interests in pending litigation to extract sexual favors from her. In so doing, he impermissibly took advantage of the dominance that often characterizes the lawyer's position in an attorney-client relationship.

A lawyer frequently is retained to protect a client's interest that is threatened or to promote the client's interests by recourse to the legal system. The attorney-client relationship is grounded in trust: the client's justifiable expectation that the lawyer retained will act in the client's best interests. Dependent on the lawyer to determine how best to protect or further those interests the client is apt to accede to the lawyer's advice and counsel and becomes vulnerable to a lawyer's inappropriate personal conduct. The prospect of terminating the lawyer's representation and starting over with new counsel places the client at a disadvantage in dealing with the lawyer on a personal level.

It is clear from the record before us that Attorney Kraemer's client was at a disadvantage in dealing with his sexual advances. Moreover, even if his representation of the client was not in fact materially limited by his personal interests, Attorney Kraemer's sexual contact with her created the potential for such conflict. His fiduciary relationship as the client's attorney imposed on Attorney Kraemer the responsibility to act in her best interests. His abuse of that relationship to further his own personal interests was egregious.

As discipline for his professional misconduct established in this proceeding, we suspend Attorney Kraemer's license to practice law for six months. Consistent with prior cases dealing with attorney unsolicited sexual contact with clients, that suspension corresponds to the seriousness of that misconduct.

IT IS ORDERED that the license of Attorney Donald J. Kraemer to practice law in Wisconsin is suspended for a period of six months, commencing June 3, 1996.

IT IS FURTHER ORDERED that within 60 days of the date of this order Donald J. Kraemer pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Donald J. Kraemer to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Donald J. Kraemer comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.