In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Carlos GAMINO, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Carlos GAMINO, Respondent-Appellant.

Supreme Court

*No. 2003AP2422–D. Submitted on briefs September 30, 2005.
—Decided December 20, 2005.*

2005 WI 168

(Also reported in 707 N.W.2d 132.)

For the respondent-appellant there were briefs by *Michael J. Ganzer, Joseph T. Ganzer* and *Hodan, Doster & Ganzer, S.C.,* Milwaukee.

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe Krohn Pope LLP,* Edgerton.

¶ 1. PER CURIAM. Attorney Carlos Gamino appeals from a referee's report and recommendation concluding that Attorney Gamino engaged in professional misconduct in two client matters and misrepresented his conduct to a trial court and to Office of Lawyer Regulation (OLR) investigators, thereby violating the rules of professional conduct.

¶ 2. The referee recommended the court suspend Attorney Gamino's license to practice law for a period of six months. We adopt the referee's findings of fact and conclusions of law, and agree that a six-month suspension is appropriate discipline for Attorney Gamino's misconduct in this matter. We further conclude that Attorney Gamino should pay the costs of this disciplinary proceeding of $19,437.35 as of October 3, 2005.

¶ 3. Attorney Gamino was admitted to the practice of law in Wisconsin in 1997. He has no prior disciplinary history.

¶ 4. The OLR filed a complaint in this matter on September 17, 2003, alleging four counts of misconduct stemming from allegations that Attorney Gamino engaged in inappropriate sexual relations with two clients and that he misrepresented his activities with one of these clients in open court and to the OLR investigators, all in violation of the Supreme Court Rules of Professional Conduct. Specifically, the complaint alleged:

COUNT ONE: By representing [C.M.] while having sexual relations with [C.M.'s] mother, respondent provided representation that may have been materially

561

limited by his own interests and failed to obtain a written waiver of the conflict from his client, in violation of SCR 20:1.7(b).

COUNT TWO: By testifying inaccurately, under oath, that he had not met [M.C-M.] on December 12, 2000, and by testifying he never had sexual relations with [M.C-M.], respondent knowingly made a false statement of fact to a tribunal, in violation of SCR 20:3.3(a)(1).

COUNT THREE: By asserting to staff and District investigators that he had not met with [M.C-M.] on December 12, 2000, by asserting that he had never had sexual relations with [M.C-M.], and by stating that an imposter must have made a call to the juvenile authorities on behalf of [C.M.] on December 12, 2000, respondent, in the course of an investigation, made misrepresentations, in violation of SCR 22.03(6) and SCR 20:8.4(f).

COUNT FOUR: By engaging in sexual relations with [J.M.] when she was his client and when a consensual sexual relationship did not exist prior to the commencement of the lawyer-client relationship, respondent entered into a prohibited transaction creating a conflict of interest, in violation of SCR 20:1.8(k)(2).

¶ 5. Attorney Gamino filed an answer on November 14, 2003, and the matter was submitted to referee Kim Peterson. Attorney Gamino vigorously challenged the OLR's allegations; he moved to dismiss the complaint on the grounds that the charges filed against him were both vague and stale. The motion was denied and the matter proceeded to an evidentiary hearing in May 2004. Following submission of post-hearing briefs, the referee issued a report and recommendation dated October 25, 2004. Attorney Gamino now appeals.

¶ 6. Attorney Gamino contends that a number of the referee's findings of fact are clearly erroneous. He

contends, further, that his due process rights have been violated by this proceeding.

¶ 7. The standard of review before this court is that the referee's findings of fact are affirmed unless clearly erroneous, but conclusions of law are reviewed on a de novo basis. *See In re Disciplinary Proceedings Against Kalal,* 2002 WI 45, 252 Wis. 2d 261, 643 N.W.2d 466. The referee's credibility determinations are intertwined with his or her findings of fact. *See In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 498 N.W.2d 380 (1993).

¶ 8. We first review the referee's findings of fact made with respect to Attorney Gamino's representation of C.M., a minor, in a children in need of protection or services (CHIPS) proceeding, and his subsequent representation of the child's mother, M.C-M.

¶ 9. We recite the history giving rise to the grievance filed against Attorney Gamino because it is relevant to his arguments on appeal. M.C-M. initially retained Attorney Gamino in December 2000 to represent her minor son, C.M., in a pending juvenile proceeding. As will be discussed, the parties vigorously dispute whether Attorney Gamino was retained on December 12 or on December 13. They vigorously dispute what, if anything, occurred between Attorney Gamino and M.C-M. on December 12. It is undisputed that M.C-M. subsequently retained Attorney Gamino on her own behalf to help her secure a temporary restraining order against a male acquaintance. She also retained Attorney Gamino's legal services in February 2001 after she was taken into custody in Waukesha County and her probation status was threatened. Attorney Gamino

later represented M.C-M. on charges of theft, forgery, and contributing to the delinquency of a minor.

¶ 10. On October 23, 2001, M.C-M. was sentenced to ten years in prison related to earlier criminal convictions. Attorney Gamino represented M.C-M. for post-sentencing purposes. In late 2001 he sought an appointment of a public defender on M.C-M.'s behalf on the grounds that she was indigent.

¶ 11. On December 5, 2001, M.C-M. wrote a letter to the circuit court in her postconviction sentencing proceeding in which she requested a new lawyer, claiming that Attorney Gamino was unethical. In this letter she alleged that she and Attorney Gamino had engaged in sexual relations beginning December 12, 2000, the night she retained him to represent her son. She claimed that she was entitled to postconviction relief and new counsel on the grounds that her lawyer had engaged in sexual relations with her during the course of the legal representation.

¶ 12. At the hearing before the circuit court on M.C-M.'s postconviction sentencing matter, Attorney Gamino denied having sexual relations with M.C-M. He asserted that he did not meet her until December 13, 2000.

¶ 13. The circuit court denied M.C-M.'s motion. Although the circuit court declined to make specific findings on the alleged sexual misconduct, the circuit court commented quite unfavorably on M.C-M.'s credibility.

¶ 14. In February 2002 a grievance was filed against Attorney Gamino alleging that he had engaged in an inappropriate sexual relationship with M.C-M. Gamino was notified of this grievance in April 2002. He wholly denied the accusations and the matter proceeded to an evidentiary hearing.

¶ 15. The evidence elicited at the hearing included documentary evidence, the testimony of the two grievants, Attorney Gamino's testimony, and the testimony of various other witnesses for both Attorney Gamino and the OLR.

¶ 16. M.C-M. testified that she first met Attorney Gamino on the morning of December 12, 2000, at a bagel shop to discuss her son's case. She claims they flirted during this meeting and that they arranged to meet later that day at a mall to further discuss the case. She testified that at her request, Attorney Gamino arranged for her son's release from the juvenile detention center where he was detained so the boy could spend the day and night with her.

¶ 17. M.C-M. testified that she and her son met Attorney Gamino at a mall later that afternoon and that Attorney Gamino was physically affectionate with her during this time. She claimed that she told Attorney Gamino she was concerned about her living situation because her boyfriend was sometimes violent. She testified that Attorney Gamino made arrangements for M.C-M. and her son to stay at a hotel that night.

¶ 18. M.C-M. testified that while she was home collecting additional clothing for the evening, the juvenile detention center telephoned her inquiring when her son would return. She apparently informed them that she had met with her lawyer and that C.M. would return the following day.

¶ 19. M.C-M. testified that she, her son and a couple of his friends arrived at the hotel around midnight and that Attorney Gamino was waiting for her. She testified that two hotel rooms were obtained and that she and Attorney Gamino engaged in sexual relations in one of the hotel rooms that evening.

¶ 20. M.C-M. testified that the sexual relationship continued after she retained Attorney Gamino to assist her in obtaining a restraining order and she described several specific incidents of sexual activity between them, including one that allegedly occurred in the conference room of the jail where M.C-M. was incarcerated.

¶ 21. Attorney Gamino vigorously challenged M.C-M.'s testimony and her credibility. He correctly notes that M.C-M. was not specific as to the dates many of the alleged incidents occurred,[1] and he contends this undermines her credibility and makes it exceedingly difficult to defend against her allegations.

¶ 22. Attorney Gamino asserts that he did not meet M.C-M. until December 13 and he wholly denies having any sexual relationship with her, at any time. He denies accompanying her at the mall on December 12, and he denies staying at the hotel with her that night. He maintains that he spent December 12 at a "Market America" meeting with his brother and that he and his brother socialized together that night, returning home about 2:30 a.m.

¶ 23. Attorney Gamino's brother corroborated Gamino's testimony regarding their whereabouts on December 12, 2000.

¶ 24. An employee of the jail testified that M.C-M.'s claim of engaging in sexual activity in the jail conference room sounded "exceptionally difficult."

¶ 25. This was a challenging matter for the referee to evaluate. As a "he said/she said" situation with no third-party witnesses to the alleged sexual activity, resolution of the question turned almost completely on

---

[1] For example, M.C-M. described one incident of alleged sexual activity as occurring "around Christmas."

the referee's determinations of various witnesses' credibility. It is undisputed—and indeed the referee acknowledged—that there were substantial reasons to question M.C-M.'s credibility, not least of which was the fact that the initial allegations were made in the context of M.C-M.'s effort to obtain new counsel and rehearing on an unsatisfactory criminal sentencing matter.

¶ 26. The referee acknowledged the issues undermining M.C-M.'s credibility, including her lengthy criminal history. Indeed, the referee stated: "Taken alone, [M.C-M.'s] testimony may be hard to believe."

¶ 27. However, the referee was persuaded by other evidence adduced at the hearing, including the testimony of M.C-M.'s son, C.M. The referee stated that she found C.M. to be very credible and was impressed with his testimony.

¶ 28. At the time of the hearing C.M. was 18 years old, living with a foster family, and finishing high school. He corroborated his mother's testimony about Attorney Gamino and M.C-M.'s conduct at the mall on December 12, 2000. He testified that Attorney Gamino and his mother slept together in a separate hotel room, apart from him that night. He testified that he was upset by his mother's conduct and that he went to his mother's hotel room at approximately 2 or 3 a.m. He testified that he found Attorney Gamino present in the hotel room and saw an open condom wrapper on the nightstand. He testified that he became upset and yelled at his mother. He testified that Attorney Gamino left the room and that M.C-M. then called Attorney Gamino's cell phone telling him to return to the hotel room. The referee noted that cellular telephone records confirm that a telephone call was made to Attorney Gamino's cell phone at 2:25 a.m.

¶ 29. Documentary evidence in the record indicated that two separate hotel rooms were obtained for M.C-M. and her son, on two separate floors, on the night of December 12, 2000.

¶ 30. As noted, Attorney Gamino denied that a meeting with M.C-M. at a bagel shop ever occurred. However, an investigator with the Public Defender's Office testified that he saw Attorney Gamino with a woman at the bagel shop one morning in December and that their behavior was "verging on flirtatious." While he could not remember the specific date of the incident he testified that he noticed the incident and the individuals' behavior, because he knew Attorney Gamino's fiancée.

¶ 31. An attorney and former judge who shared offices with Attorney Gamino also testified at the evidentiary hearing. He testified that he saw Attorney Gamino and M.C-M. together on several occasions after December 12 and that he was "concerned" about their relationship and behavior, in part because he knew Attorney Gamino's fiancée. He stated that he spoke with Attorney Gamino on one occasion, informing him that he felt Attorney Gamino's relationship with M.C-M. was "inappropriate."

¶ 32. A social worker for Waukesha County testified that on December 20, 2000, M.C-M. confided that she was having an affair with her lawyer, Gamino. The social worker noted this disclosure in her file.

¶ 33. The referee found that various telephone records corroborated M.C-M.'s version of events. Although Attorney Gamino initially denied making any calls to the juvenile detention center on C.M.'s behalf on December 12, and claims he was not retained to represent C.M. until December 13, there is record evidence indicating that Attorney Gamino did telephone the

juvenile detention center around 10:40 p.m. on December 12 to confirm the boy would spend the night with his mother.[2]

¶ 34. Telephone records also reflect that Attorney Gamino called the home where M.C-M. was staying on the morning of December 12, 2000. Attorney Gamino's telephone records reflect numerous calls to M.C-M.'s telephone number between 10:22 p.m. and 12:30 a.m. Attorney Gamino also placed a telephone call to the home where M.C-M. was staying at 10:43 p.m. on December 12.

¶ 35. With respect to Attorney Gamino's alibi and his brother's testimony, the referee noted that "Market America" meetings are busy meetings with hundreds of attendees that are conducted each Tuesday. She noted that there was no other evidence that Attorney Gamino attended a meeting on December 12. The referee also noted that Attorney Gamino did not advance this alibi during the course of the investigation, but for the first time at the hearing.

¶ 36. Ultimately, after acknowledging a number of discrepancies among the witnesses' testimony, the referee found that the witness testimony and documentary evidence supported M.C-M.'s version of events. Specifically, the referee found, inter alia, that M.C-M. retained Attorney Gamino to represent her minor son on December 12, 2000, and that Attorney Gamino and M.C-M. engaged in a sexual relationship on December 12 and 13, 2000. The referee found further that no written waiver was obtained relating to this conflict of interest. The referee also found that Attorney Gamino

---

[2] Attorney Gamino initially explained the telephone call made to the juvenile detention center on behalf of C.M. on December 12, 2000 must have been made by "an imposter."

represented to the trial court in M.C-M.'s postconviction sentencing matter that he never had sexual relations with M.C-M., and that Attorney Gamino represented to OLR staff and a district investigator that he never had sexual relations with M.C-M. The referee specifically found that these latter "representations were not truthful."

¶ 37. We now review the referee's findings of fact made with respect to Attorney Gamino's representation of a client named J.M.

¶ 38. J.M. was charged with driving under the influence, third offense, in January 2001. It is undisputed that she had no connection with Attorney Gamino before she retained him on or about February 2, 2001. J.M. later retained Attorney Gamino to represent her on several successive matters.

¶ 39. J.M. testified that she met Attorney Gamino at a bar in Wauwatosa in February 2001 to discuss legal representation. She described a "mutual attraction." She testified that they met again a couple weeks later at a Champs restaurant. She testified that both drank alcohol at this meeting and that she became intoxicated. She testified that later that evening, they engaged in sexual activity in Attorney Gamino's vehicle. J.M. testified that the sexual relationship continued for a period of time; she described six specific incidents of sexual activity. However, she admitted that she was usually intoxicated during these episodes[3] and that she did not remember all the details.

¶ 40. J.M. testified that in March 2002 while in drug and alcohol treatment following a period of incarceration, she told her social worker that she had had a

---

[3] J.M. testified that Attorney Gamino supplied the alcohol she drank when some of the incidents allegedly occurred.

sexual relationship with her lawyer, Gamino. The social worker memorialized this conversation in a written memorandum dated March 5, 2002. J.M. filed a grievance against Attorney Gamino in March 2002.

¶ 41. After the OLR commenced its investigation, J.M. apparently proposed settling her claims against Attorney Gamino for $5000. In July 2002 she wrote Attorney Gamino and demanded $25,000 to settle her claims. Attorney Gamino advised the OLR of this communication. Attorney Gamino did not pay any sums to J.M. to "settle" the matter.

¶ 42. Attorney Gamino flatly denies engaging in sexual activity with J.M. He introduced evidence, namely the testimony of his wife and his physician, disputing J.M.'s characterization of certain of his physical characteristics.

¶ 43. The referee deemed the discrepancies in testimony "minimally relevant." She found, inter alia, that an attorney-client relationship existed between J.M. and Attorney Gamino from February 2001 through January 2002. She found further that they also had a sexual relationship as described by J.M. and as alleged in the OLR complaint filed against Attorney Gamino throughout most of this time. She found that this relationship did not predate Attorney Gamino's representation of J.M.

¶ 44. On appeal, Attorney Gamino contends that the referee's factual findings with respect to both the M.C-M. and J.M. matters are clearly erroneous. He reiterates various discrepancies among the testimony and evidence presented at the hearing. He describes the two complainants as women with "sketchy memories" and "ulterior motives." He characterizes J.M. as "an admitted addict who tried to extort money from Mr. Gamino with a false allegation of sexual assault." His

depiction of J.M. is strikingly at odds with the referee's opinion. The referee specifically noted that she found J.M.'s testimony "particularly compelling" and that J.M. appeared "honest and straightforward." The referee was persuaded that J.M. had no motivation to lie and concluded that she was not motivated by anger.[4]

¶ 45. We accept the referee's findings of fact. They were, for the most part, based on the referee's assessment of the credibility of the witnesses, and on review we will not interfere with that determination. The referee obviously believed the testimony of the clients and the other witnesses above that of Attorney Gamino.[5] *See, e.g., In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, 269 Wis. 2d 43, 11, 675

---

[4] Following the submission of briefs in this matter Attorney Gamino filed a motion to supplement the record with evidence that J.M. was not—as she testified—alcohol free for two years prior to the disciplinary hearing in May 2004. As such, he contends she committed perjury. The information provided to the court indicates that in June 2004, J.M. was involved in a serious automobile accident while driving drunk. This information led to further investigation and submission of an affidavit from a former boyfriend of J.M. who stated that J.M. was drinking alcohol between August 2003 and September 2003. The affidavit stated that the affiant and J.M. had a "falling out" in September 2003 and that he had not seen J.M. since. Attorney Gamino's motion to supplement the record with this evidence was granted; his request for a new hearing based on this evidence was denied.

[5] Although the information provided to the court in the motion to supplement the record gives us pause, we conclude that it does not warrant a rehearing. The referee was well aware of J.M.'s alcoholism. We are not persuaded that evidence that J.M. failed to maintain sobriety would necessarily alter the referee's conclusions about the existence of a sexual relationship between J.M. and Attorney Gamino.

N.W.2d 747 (declining to conclude that the referee's findings were clearly erroneous where they rely heavily on the credibility of the witnesses and the referee was best situated to judge the credibility of the witnesses); *In re Disciplinary Proceedings Against Lucareli,* 2000 WI 55, 235 Wis. 2d 557, 32, 611 N.W.2d 754 (noting that a reviewing court defers to the finder of fact on matters decided on the basis of witness credibility absent an erroneous exercise of discretion or an error of law). With respect to those findings not based on witness credibility we also conclude that the referee's findings were not clearly erroneous and we accept them. *See In re Disciplinary Proceedings Against Camacho,* 126 Wis. 2d 104, 209, 375 N.W.2d 204 (1985).[6]

¶ 46. Attorney Gamino also challenges the disciplinary procedure on several related grounds, contending that he was deprived of his right to due process in this proceeding. He contends that the accusations are so stale as to preclude disciplinary prosecution. He challenges the lack of specificity with respect to when specific incidents of sexual misconduct allegedly occurred, asserting that this compromises his ability to defend against the charges. He contends that this lack of specificity rose to a denial of his due process rights.

[6] Attorney Gamino specifically challenges the referee's detailed descriptions and analysis of the number and timing of various telephone calls made to and from Attorney Gamino's cellular telephone. We agree that this analysis was, in some instances, overly speculative. However, it is apparent that these findings or the inferences drawn therefrom, are not necessary to support the referee's conclusions of law; even if these findings are discounted, the ultimate conclusions of law have adequate support from the referee's other factual findings.

¶ 47. As we understand it, the crux of Attorney Gamino's defense is that he "should only be required to defend himself on charges with specific dates that he has a reasonable chance of knowing, otherwise he is called to account for all his actions over a two year period—an impossible task." With respect to specific dates alleged—namely December 12 and 13, 2000—Gamino suggests that these dates are too old or "stale" to permit him to prepare a reasonable defense. He emphasizes that the OLR's complaint was filed nearly three years after this alleged incident.

¶ 48. We are not persuaded. This court has held that a lawyer's constitutional right to due process in a disciplinary proceeding involves only the right to prior notice of the charges, the right to prepare and defend against the charges, and the right to a full hearing on the charges. *See State v. Hersh,* 73 Wis. 2d 390, 243 N.W.2d 178 (1976); *see also, In re Disciplinary Proceedings Against Eisenberg,* 117 Wis. 2d 332, 344 N.W.2d 169 (1984); and *In re Complaint Against Seraphim,* 97 Wis. 2d 485, 294 N.W.2d 485 (1980). This proceeding certainly satisfied these requirements.

¶ 49. The incidents involving M.C-M. allegedly occurred from December 2000 through 2001. Attorney Gamino knew of M.C-M.'s claims and was called to respond to them in open court as early as December 2001 at her postconviction sentencing matter. He was formally notified that a grievance had been filed against him on April 15, 2002. He subsequently had a full evidentiary hearing before a referee after the OLR's complaint was filed. It is true that J.M., in particular, was unable to pinpoint the dates of alleged sexual contact with much accuracy. Her testimony included statements like: "springtime, you know, probably April, May, something like that maybe." However, J.M. con-

574

ceded in the hearing that her memory was affected by her use of alcohol and cocaine during the time she claimed sexual involvement with Attorney Gamino, and the referee was able to consider these weaknesses in her testimony in evaluating the OLR's allegations.

¶ 50. Moreover, three of the four counts in the complaint pertain to Attorney Gamino's alleged activities with M.C-M. on a specific date, December 12, 2000. These allegations are certainly not vague and we decline to hold that a grievance filed approximately two years after the attorney misconduct allegedly occurred is too stale, as a matter of law, to permit prosecution.

¶ 51. Having accepted the referee's findings of fact in this matter and rejected Attorney Gamino's due process claim, we conclude that the referee's findings clearly support the conclusions of law articulated in the report and recommendation.

¶ 52. The referee concluded that by undertaking representation of C.M., a minor, then engaging in a sexual relationship with C.M.'s mother, Attorney Gamino violated SCR 20:1.7(b), which provides:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

> (1) the lawyer reasonably believes the representation will not be adversely affected; and

> (2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

It is undisputed that no waiver was obtained in the C.M. matter. We agree that by entering into a sexual relationship with M.C-M. while having been retained to represent her son and without obtaining the requisite written waiver, Attorney Gamino violated SCR 20:1.7(b).

■

¶ 53. The referee concluded that Attorney Gamino made a false statement of fact to a tribunal in violation of SCR 20:3.3(a)(1)[7] when he testified under oath that he had not undertaken representation of M.C-M.'s son on December 12, and when he denied having any sexual relationship with M.C-M. We agree that the referee's findings of fact support this legal conclusion.

■

¶ 54. The referee further concluded that Attorney Gamino violated SCR 20:8.4(f)[8] and SCR 22.03(6)[9] when he denied to the OLR staff and to a district investigator that he met M.C-M. on December 12 and also denied having any sexual relationship with her. Again, we conclude that the referee's findings support this conclusion of law.

---

[7] SCR 20:3.3(a)(1) provides that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal."

[8] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[9] SCR 22.03(6) provides that in the course of an OLR investigation, "the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

■

¶ 55. Finally, we agree with the referee's conclusion that Attorney Gamino violated SCR 20:1.8(k)(2)[10] when he commenced and engaged in a sexual relationship with his client, J.M.

■

¶ 56. We turn to the appropriate sanction for Attorney Gamino's misconduct. The referee found that on two separate occasions Attorney Gamino entered into a sexual relationship with a female client in a vulnerable personal situation very shortly after he was retained by them. As the referee observed, one of these clients was dealing with drug and alcohol dependency and facing the loss of her children, home, possessions and numerous pending criminal matters. She was desperate and vulnerable and Attorney Gamino should have been aware of this fact. This disturbing behavior, combined with the finding of his misrepresentations about the nature of the relationship evidences a troubling pattern that we agree warrants significant discipline. The referee recommended a six-month suspension of Attorney Gamino's license to practice law in Wisconsin. We agree that the recommended sanction is not inconsistent with other cases involving similar misconduct. *See e.g., In re Disciplinary Proceedings Against Kraemer,* 200 Wis. 2d 547, 547 N.W.2d 186 (1996) (imposing six month suspension on lawyer who engaged in sexual relations with client and also engaged in deception). Finally, we direct Attorney Gamino to pay the costs of this disciplinary proceeding.

---

[10] SCR 20:1.8(k)(2) provides that a "lawyer shall not have sexual relations with a current client unless a consensual sexual relationship existed between them when the lawyer-client relationship commenced."

¶ 57. IT IS ORDERED that the license of Carlos Gamino to practice law in Wisconsin is suspended for a period of six months, effective January 24, 2006.

¶ 58. IT IS FURTHER ORDERED that Carlos Gamino comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 59. IT IS FURTHER ORDERED that within 60 days of the date of this order Carlos Gamino pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of the inability to pay those costs within that time, the license of Attorney Carlos Gamino to practice law in Wisconsin shall remain suspended until further order of the court.