In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Carlos A. GAMIÑO, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Carlos A. GAMIÑO, Respondent.

Supreme Court

*No. 2006AP2430–D.—Decided July 30, 2008.*

2008 WI 107

(Also reported in 753 N.W.2d 521.)

¶ 1. PER CURIAM. We review the recommendation of the referee, Dennis J. Flynn, that the license of Attorney Carlos A. Gamiño to practice law in this state be suspended for a period of 18 months due to his professional misconduct and that he should also be required to complete 24 continuing legal education (CLE) credits approved for ethics and pay the costs of this disciplinary proceeding.

¶ 2. Neither party appealed the recommendation so this matter is submitted to the court for review pursuant to SCR 22.17(2). We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We further determine that the seriousness of Attorney Gamiño's misconduct warrants the suspension of his license to practice law for 18 months, the requirement of completing 24 credits of

CLE courses approved for ethics, and the imposition of the costs of the proceeding, which are $16,281.02 as of April 16, 2008.

¶ 3. Attorney Gamiño was licensed to practice law in Wisconsin in 1997. His law license was suspended for six months effective January 24, 2006, because he was found to have engaged in a sexual relationship with a client in one matter and a sexual relationship with a juvenile client's mother in another matter. *See In re Disciplinary Proceedings Against Gamiño*, 2005 WI 168, 286 Wis. 2d 558, 707 N.W.2d 132. He also made false representations about his conduct to a court and to the Office of Lawyer Regulation (OLR) investigators in that matter. Attorney Gamiño was publicly reprimanded on April 28, 2006, for failure to act with reasonable diligence, failure to immediately refund unearned fees, contacting a client after receiving notice that successor counsel had been retained in one matter, and for a trust account violation. *See In re Disciplinary Proceedings Against Gamiño*, 2006 WI 32, 290 Wis. 2d 1, 712 N.W.2d 873. Attorney Gamiño's petition for reinstatement was granted by this court on September 5, 2007. *See In re Disciplinary Proceedings Against Gamiño*, 2007 WI 115, 305 Wis. 2d 1, 737 N.W.2d 662.

¶ 4. The misconduct at issue in this proceeding occurred in 2004, about the same time as the incidents giving rise to his prior discipline for professional misconduct.

¶ 5. On or about April 20, 2004, Attorney Gamiño met with N.B. and E.B. to discuss helping them finalize their divorce action that had then been pending for about seven months. The couple had been married since February 1979.

¶ 6. When they met with Attorney Gamiño, both N.B. and E.B. had separate attorneys. The husband,

E.B., suggested they find one attorney to represent them both in order to save money. Attorney Gamiño agreed to represent both N.B. and E.B. He sent separate stipulations and orders for substitution of counsel to the attorneys of record for both N.B. and E.B. However, he did not obtain either party's written consent to the dual representation and he failed to file the stipulations with the court.

¶ 7. At the time Attorney Gamiño undertook the representation, a court trial in the divorce proceeding was scheduled for June 22, 2004. On June 21, 2004, Attorney Gamiño's office contacted the court requesting an adjournment of the court trial. The court denied the request because Attorney Gamiño was not counsel of record because he had failed to file the substitution of counsel documents with the court. On June 22, 2004, the case was placed on the dismissal calendar because neither party appeared. A notice of dismissal was sent to the parties advising them that the action was set for the July 6, 2004, dismissal calendar. Attorney Gamiño claims that he did not receive a copy of the notice of hearing of the dismissal matter. No one appeared in court on July 6, 2004, and the case was dismissed for failure to prosecute. Attorney Gamiño did not inform N.B. that the divorce action had been dismissed.

¶ 8. On September 28, 2004, Attorney Gamiño filed a motion to reopen the divorce case. A hearing on the motion was scheduled for January 3, 2005. Attorney Gamiño appeared at the hearing on behalf of E.B. N.B. did not appear at this hearing; she alleged that Attorney Gamiño failed to tell her about it. The court granted the motion to reopen the matter and the divorce hearing was scheduled for February 3, 2005.

¶ 9. At the February 3, 2005, final divorce hearing, Attorney Gamiño told the court that N.B. was

appearing pro se and that he was representing E.B. N.B. later testified that until that date, she believed that Attorney Gamiño was representing her as well as E.B. Attorney Gamiño disputes this claim, stating that he informed N.B. he would not represent her during a December 2004 telephone conversation. However, he could produce no written documentation to support this assertion.

¶ 10.  Attorney Gamiño prepared the joint financial disclosure statement using information he received from the parties. His office also prepared the marital settlement agreement. Subsequently, a number of problems were identified with these documents that were disadvantageous to N.B. For example, the value of E.B.'s retirement accounts was never listed and certain monies the parties had agreed would go to N.B. were not mentioned in the marital settlement agreement.

¶ 11.  The joint financial disclosure statement was signed on April 24, 2004. The court commissioner granted the divorce judgment and directed the marital settlement agreement be part of that judgment.

¶ 12.  After the divorce, Attorney Gamiño received a letter from N.B.'s post-divorce attorney requesting a copy of her file. He did not comply with that request. He later explained that he opted not to comply because E.B. had not authorized him to release the file documents.

¶ 13.  The OLR complaint in this matter was filed on October 6, 2006, and alleged seven counts of professional misconduct committed in connection with the divorce proceeding. The referee ultimately concluded that Attorney Gamiño committed five of the seven counts and exonerated him on the remaining two counts.

549

¶ 14. At the evidentiary hearing, the referee heard extensive expert testimony regarding Attorney Gamiño's handling of the divorce matter. Attorney Cheryl Gemignani provided expert testimony and opined that:

1. The marital settlement agreement was signed on April 22, 2004. It could not have been signed before the preparation of the joint financial disclosure statement dated April 24, 2004. The documents, she believes, were falsified.

2. Attorney Gamiño had a duty to ascertain a fair market value of all of E.B.'s retirement accounts and other assets in order to comply with the law in Wisconsin regarding a presumptive equal division of the marital estate. This was not done.

3. It is misconduct for an attorney to present for the first time the complete joint financial disclosure statement to the clients at the time of the final divorce hearing as stated by N.B.

4. Attorney Gamiño stated he did not know the difference between a defined benefit and a defined contribution plan. He had a duty to consult with other professionals to get this information. He did not do so.

¶ 15. Attorney Margaret Wrenn Hickey also provided expert testimony and opined that Attorney Gamiño's legal representation was deficient in the following respects:

1. Attorney Gamiño represented both parties when their interests were adverse. This conflict situation was not waivable. Even if the condition was waivable, Attorney Gamiño did not obtain a written waiver.

2. The parties were not on an equal footing. N.B. was the victim of domestic violence, in poor health, and

her education and experience in financial and business matters was not equal to E.B.'s.

3. Attorney Gamiño did not reasonably communicate with his clients regarding the divorce dismissal, the motion to reopen, the marital settlement agreement, the joint financial disclosure agreement, and the notice regarding the final divorce hearing.

4. Securing only three years of maintenance for this long-term marriage is not reasonable. It does not reasonably consider the medical disabilities of N.B., and the final maintenance award was indefinite.

5. A patently unfair settlement (maintenance and property division) can only occur through a knowing waiver. That waiver did not occur in this case. Attorney Gamiño has a duty of loyalty to his client and it was not honored.

6. Attorney Gamiño did not inform himself on the actual situation of his client (asset verification, health condition of N.B., discussion of law relative to 50–50 division of marital estate and maintenance) and as a result, the clients were not able to make informed decisions regarding their rights. One meeting with clients is not enough. Separate meetings are needed with each client. Meetings to review marital settlement agreement are needed with each client.

7. The marital settlement agreement did not include all of the assets listed in the joint financial disclosure and the list of assets prepared by E.B. This focuses on the $98,000 N.B. was to get regarding the pension.

8. Attorney Gamiño failed to reasonably notify his clients that at trial he would only represent E.B. and not N.B. There was no written consent or waiver by clients. No waiver was possible in this case as Attorney

Gamiño had critical knowledge as to N.B. and thus the conflict he had could never be ameliorated.

9. The matter regarding the embryos was never resolved between the parties in the marital settlement agreement. Attorney Gamiño has a duty to resolve all matters in conflict to the extent possible.

10. Attorney Gamiño failed to obtain the files of the two prior attorneys who represented the parties in this divorce. Critical information regarding the marital estate would perhaps be disclosed.

¶ 16. The referee considered the testimony of other witnesses as well, including Attorney Gamiño's family members. Ultimately, the referee found that Attorney Gamiño failed to obtain information essential to ensuring an equitable division of property in this divorce proceeding. More specifically, Attorney Gamiño failed to:

(1) Obtain financial documents and information needed to establish N.B.'s interests in an equitable division of marital property and maintenance;

(2) Inquire about N.B.'s domestic situation, which included medical complications and a history of domestic abuse by E.B.;

(3) Inform N.B. and E.B. of the presumption in Wisconsin that their property, including retirement assets, would be divided equally between them;

(4) Inquire about the dissipation of assets;

(5) Address the division of E.B.'s pension, savings plan and other retirement savings in the marital settlement agreement;

(6) Address the subject of retirement plans and/or qualified domestic orders;

(7) Remove N.B. from a mortgage note for property awarded to E.B.;

(8) Advise N.B. regarding her rights to maintenance, particularly in light of her disability and receipt of public aid;

(9) Obtain N.B.'s written consent for continued representation of E.B. only in the divorce action;

(10) Return N.B.'s case file after she requested it through her new attorney;

(11) Notify N.B. of his withdrawal as her counsel and give her ample time to secure a new attorney; and

(12) Give proper information to the court and district committee regarding the marital settlement agreement, when it was signed, and knowledge of E.B.'s retirement accounts.

¶ 17.  The referee was not persuaded by Attorney Gamiño's assertion that it was not his responsibility to ensure an equitable division of property in this divorce proceeding. Attorney Gamiño argued that N.B. and E.B. had separate attorneys and he thought that they had resolved all divorce matters before coming to see him. He explained that N.B. and E.B. simply wanted him to secure their divorce by stipulation under agreements that had been reached by their prior attorneys. Attorney Gamiño said he informed the parties that if a dispute arose he would only represent one party and the parties agreed that would be E.B.

¶ 18.  Attorney Gamiño testified further that he did try to explain the law regarding maintenance and property division to the parties but they were not interested in that information. He admitted that he did not have the parties sign any consent to allow him to

represent both the wife and husband in this divorce matter. He acknowledged that he did not recognize the disparities between N.B.'s and E.B.'s income, education, and work background. Attorney Gamiño testified that he trusted his clients regarding the retirement information and did not check into it himself.

■

¶ 19. Turning to the allegations in the OLR complaint, the referee concluded that Attorney Gamiño violated former SCR 20:1.7(a),[1] by representing both N.B. and E.B. in their divorce proceeding when Attorney Gamiño could not have reasonably believed that N.B.'s interests would not be adversely affected by failing to obtain written consent to the dual representation. In reaching this conclusion, the referee observed that the record is clear that Attorney Gamiño knowingly represented both parties in an adverse divorce proceeding and never sought to obtain any consent or waiver from the clients regarding this situation.

---

[1] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

Former SCR 20:1.7(a) states: Conflict of interest: general rule.

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents in writing after consultation.

¶ 20. The referee also concluded that Attorney Gamiño failed to keep N.B. reasonably informed about the status of her divorce case in violation of SCR 20:1.4.[2] The referee explained:

> N.B. first learned of the fact that Attorney Gamiño was only going to represent E.B. just before going into court for the default divorce on February 3, 2005. E.B.'s testimony corroborates this. Attorney Gamiño's contentions to the effect that he advised E.B. and N.B. orally about the dismissal of the divorce due to non-prosecution, that he advised N.B. orally about the motion to reopen and the date for that hearing, and that he orally told N.B. in December 2004 that he was going to represent E.B. only in the divorce and that she should get her own attorney are rejected . . . . N.B.'s testimony on these issues is more credible than that of Attorney Gamiño.

¶ 21. The referee also concluded that Attorney Gamiño violated SCR 20:1.1[3] which provides that a lawyer shall provide competent representation to a client because Attorney Gamiño did not make an adequate inquiry into E.B.'s retirement assets, N.B.'s health condition, her disability status, or the domestic violence that she had experienced in the past from E.B. The referee noted that, "The fact that N.B. was receiving Social Security disability income should have alerted him to make some further inquiry into her medical and work

---

[2] Former SCR 20:1.4 states "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] Former SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

history insofar as maintenance was concerned." He found that "the credible evidence establishes that Attorney Gamiño did nothing to advise N.B. of her rights in this area. . . . [H]e did not discuss with N.B. her rights to fair maintenance in this long-term marriage."

¶ 22. As such, the referee concluded that "OLR has established by clear, satisfactory and convincing evidence that Attorney Gamiño failed to provide competent legal representation to his clients in this divorce matter" in violation of SCR 20:1.1.

¶ 23. Similarly, the referee found that the "credible evidence establishes that Attorney Gamiño did not advise N.B. before the final hearing that he would not be representing her in the divorce action." Attorney Gamiño thus violated SCR 20:1.9(a),[4] which provides that a lawyer who has formerly represented a client in a matter shall not represent another person in the same or a substantially similar matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation. The referee observed:

> N.B. had no real information regarding her husband's pension accounts. She was disabled under Social Security and likely could not work. She had been a past victim of domestic abuse by E.B.. The marital settlement agreement did not give her the $98,000 that she was to get from her husband's known pension accounts. Under the guise of maintenance, she was to get $500

---

[4] Former SCR 20:1.9(a) states that a lawyer who has formerly represented a client in a matter shall not "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation; . . . ."

per month toward her share (the $98,000) of the property division. However, those payments were not guaranteed in the event of E.B.'s death. This approach meant that the alleged maintenance was a tax deductible expense for E.B. and N.B. would be obligated to pay taxes on what in fact were payments to her over time of her share of the marital estate. Attorney Gamiño knew or should have known all of this information. It was as expert witness Hickey said. The conflict was not waivable by Attorney Gamiño regarding the adverse position of these parties. Under Attorney Gamiño's duty of loyalty to N.B., he was obligated to disabuse N.B. as to the patently unfair divorce agreement that was being offered to the court. N.B. could potentially waive the conflict had she been informed of her rights, but there was no such advice given to N.B. by Attorney Gamiño and no written waiver ever was prepared or signed. Attorney Gamiño had critical knowledge as to N.B. that created an insurmountable conflict and made it impossible for him to continue to represent E.B., an adverse party to N.B., his former client, in the divorce.

¶ 24. Thus, the referee concluded that the OLR established by clear, satisfactory and convincing evidence that Attorney Gamiño violated SCR 20:1.9(a).

¶ 25. The referee also concluded that Attorney Gamiño violated SCR 20:1.16(d)[5] by failing to provide N.B.'s file to her new attorney when a request was made on June 6, 2005, after his representation of N.B. had

---

[5] Former SCR 20:1.16(d) provides as follows:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

terminated. Indeed, Attorney Gamiño never even responded to the file request. Thus, the referee found that the OLR established by clear, satisfactory and convincing evidence that Attorney Gamiño violated 20:1.16(d).

¶ 26. The referee also concluded that the OLR failed to meet its burden of proof with respect to the claim that Attorney Gamiño failed to timely file documents and make necessary court appearances. The referee stated, "The credible evidence does not establish, to the level of clear, satisfactory and convincing, that Attorney Gamiño failed to act with reasonable diligence and promptness in representing N.B. and/or E.B. regarding their divorce." Finally, the referee found that OLR had not established that Attorney Gamiño knowingly gave false information during the course of the investigation into this matter. Rather, the referee was of the opinion that Attorney Gamiño's oversights were based on ignorance. The referee found further that there was inadequate information in the record to ascertain exactly when the agreements in question were signed.

¶ 27. We accept the referee's findings of fact, and we agree with his conclusions of law. *See In re Disciplinary Proceedings Against Phillips,* 290 Wis. 2d 87, 713 N.W.2d 629, 639 (2006). Accordingly, we turn to the question of the appropriate discipline for Attorney Gamiño's misconduct.

■

¶ 28. The OLR requested a two-year suspension of Attorney Gamiño's license to practice law. Attorney Gamiño requested a public reprimand. The referee ultimately recommended an 18–month suspension and recommended further that Attorney Gamiño complete 24 credits of CLE courses approved for ethics education, and pay the costs of this proceeding. The referee concluded restitution was not appropriate in this matter.

¶ 29. Attorney Gamiño's prior disciplinary history is troubling, but we note that the conduct at issue here occurred around the same time as the incidents giving rise to his prior discipline. On balance, we agree that the recommended sanction is not inconsistent with other cases involving similar misconduct. *See, e.g., In re Disciplinary Proceedings Against Whitnall,* 2000 WI 131, 239 Wis. 2d 721, 619 N.W.2d 926. We therefore accept the recommended discipline. Attorney Gamiño's license to practice law will be suspended for 18 months. We direct Attorney Gamiño to complete 24 credits of approved coursework in the area of legal ethics and professional responsibility and to pay the costs of this proceeding.

¶ 30. IT IS ORDERED that the license of Carlos A. Gamiño to practice law in Wisconsin is suspended for a period of 18 months, effective September 2, 2008.

¶ 31. IT IS FURTHER ORDERED that Carlos A. Gamiño comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 32. IT IS FURTHER ORDERED that Carlos A. Gamiño shall complete 24 credits of CLE approved coursework in the area of legal ethics and professional responsibility.

¶ 33. IT IS FURTHER ORDERED that within 60 days of the date of this order Carlos A. Gamiño pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Attorney Carlos A. Gamiño to practice law in Wisconsin shall remain suspended until further order of the court.